UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAZON INC. and
GENARO MORALES, Owner

                    Plaintiffs,

     -against-

STATE OF NEW YORK, NEW YORK STATE
LIQUOR AUTHORITY, CITY OF NEW YORK,
MANHATTAN COMMUNITY BOARD 1,
JULIE MENIN, in her capacity as Chairperson
of Manhattan Community Board 1, and
JEFF EHRLICH, in his capacity as Co-Chairman
of Manhattan Community Board 1 – State Liquor
Authority Process Review Task Force and
Member of the Tribeca Committee,

                    Defendants.
------------------------------------------------------------X

OPINION & ORDER

11 Civ. 3666 (HB)

**Hon. HAROLD BAER, JR., District Judge:**

       This is an action alleging unlawful and discriminatory administrative practices, policies and actions brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), Section 296 of the New York State Human Rights Law, the First and Fourteenth Amendments of the United States Constitution and the common laws of the State of New York.  Before the Court is a motion to dismiss the Amended Complaint filed by defendants City of New York ("City"), Manhattan Community Board 1 ("CB1"), Julie Menin and Jeff Ehrlich (collectively, the "City Defendants").  For the following reasons, the motion is granted.

## I.  Background

       On this motion to dismiss, this Court views all facts alleged in the Amended Complaint in the light most favorable to Plaintiffs.  Plaintiffs Sazon Inc. ("Sazon") and Genaro Morales (collectively, "Plaintiffs") filed this action on May 31, 2011 and submitted an Amended Complaint on September 1, 2011.  According to the Amended Complaint, Sazon is a restaurant that serves high end Puerto Rican cuisine and is located at 105 Reade Street in the County and State of New York.  Am. Compl. ¶ 3.  It is the only Puerto Rican restaurant of its kind located in

the Tribeca section of Manhattan.  *Id.*  Genaro Morales is the President and sole shareholder of Sazon.  *Id.* ¶ 4.

CB1 is one of several community boards, the members of which are appointed by the respective Borough President.  The boards have the responsibility to review changes that are proposed within the jurisdiction of the board including liquor license applications submitted to the New York State Liquor Authority ("SLA") by bars and restaurants to make nonbinding recommendations regarding the approval or disapproval of said applications.  *Id*. ¶ 9.  Julie Menin is the chairperson of CB1, and Jeff Ehrlich is Co-Chairman of CB1's State Liquor Authority Process Review Task Force and a member of CB1's Tribeca Committee.  *Id.* ¶¶ 10, 11.

Plaintiffs allege that on or about November 25, 2008, they prepared an SLA "Application for Alcoholic Beverages Control Retail License (On Premises Liquor)" for Sazon and mailed said application to CB1.  *Id*. ¶¶ 25, 26.  This application provided proposed hours of operation between 11:30 P.M. and 2:00 A.M. on Sundays, Mondays, Tuesdays and Wednesdays and between 11:30 P.M. and 4:00 A.M. on Thursdays, Fridays and Saturdays.  *Id*. ¶ 27.

On or about, January 13, 2009, Morales appeared before the members of CB1's Tribeca Committee and informed them that he intended to serve high end Puerto Rican cuisine and offer his patrons live music and/or Latino music played by a disc jockey.  *Id*. ¶¶ 37, 38, 40.  Morales also informed CB1's Tribeca Committee that his application "would state that he would operate during the legal hours of Sunday through Thursdays from 11:30 A.M. to 2:00 A.M., and Fridays and Saturdays from 11:30 A.M. to 4:00 A.M."  *Id*. ¶ 39.  CB1's Tribeca Committee informed him that he "could only operate between the hours of 11:30 A.M. to 1:00 A.M. during weekdays and from 11:30 A.M. to 2:00 A.M. on Fridays and Saturdays," and that he could only play recorded music but not music from a disc jockey or live band.  *Id*. ¶ 41, 42.  Ehrlich purportedly stated "[e]ither take it or leave it. Otherwise you'll never get your liquor license."  *Id*. ¶ 43.

Plaintiffs allege that Morales acceded to CB1's "restrictions" under duress and misled by the express purported statements that CB1's Tribeca Committee, and not SLA, had the authority to grant, deny or condition premises licenses.  *Id*. ¶ 48.  On or about January 27, 2009, CB1 "approved" Sazon's liquor license application with said restrictions, and Morales filed Sazon's revised liquor license application with SLA, included the edited "Original Application Notice Form" where the operating hours were written over and changed to reflect the hours of 11:30

A.M. to 1:00 A.M. on Sunday through Thursday and 11:30 A.M. to 2:00 A.M. on Friday and Saturday. *Id.* ¶¶ 49, 50; Ex. D to Am. Compl. On or about May 3, 2009, Sazon's doors officially opened for business under a temporary liquor license that restricted their hours of operation, prohibited live music and music played by disc jockeys. *Id.* ¶ 51.

On or about July 27, 2009, CB1 held a "500 Foot Rule Hearing" at its office to determine whether Sazon brings a public benefit and to allow local residents to express concerns about noise violations and allegations that Sazon was staying open longer than the restricted hours provided. *Id*. ¶¶ 57, 58, 62. On or about August 12, 2009, Morales attended another CB1 open meeting to address the residents' noise complaints and to make a second request for approval to operate until 4:00 A.M. on Fridays and Saturdays and to be able to offer live music and a disc jockey to their patrons. *Id.* ¶¶ 64, 66. The SLA ultimately granted Plaintiffs' SLA License (Serial No.1220846), with an effective date of February 26, 2010 and an expiration date of January 31, 2012. *Id*. ¶ 100.

During its operation, Sazon was cited for maintaining an unauthorized additional bar in its lounge area, and Morales submitted to CB1 and SLA a request for an alteration amendment to have a second bar approved and listed on Sazon's liquor license. *Id*. ¶ 130. On or about January 2011, Plaintiffs submitted a request for an informal meeting to be made solely with members of CB1's Tribeca committee, and approximately sixty days later CB1's Tribeca Committee directed Morales to appear on April 13, 2011 for such a meeting. *Id.* ¶¶ 132, 133. On April 13, 2011, CB1 held a public meeting, and Morales raised its request to amend the operating hours and music restrictions. *Id.* ¶¶ 131-36. CB1 allowed residents to voice concerns about noise emanating from Sazon, but when Morales attempted to refute the allegations, he was instructed to stop speaking because this matter was not on the agenda, and consequently no formal vote took place on Plaintiffs' request. *Id*. ¶¶ 136-43.

On April 20, 2011, Plaintiffs notified CB1 that they would be filing an application with SLA to alter its premises to include a second bar in Sazon's lower lounge and to request that SLA reconsider its prohibition of a disk-jockey. *Id*. ¶¶ 144, 145. On April 27, 2011, CB1 notified Plaintiffs that it denied Plaintiffs' requests for the bar alteration and addition of a disc jockey and would recommend to SLA that it should not approve either request. *Id.* ¶ 147. At the time this motion was filed it did not appear that SLA had ruled on either request (*see* 10/5/2011

City Defs.' Mem. in Support of Mot., at 6), and the parties have not notified the Court of any change to the status of said requests.

The Amended Complaint contains sixteen counts alleging that the State of New York and New York State Liquor Authority (collectively, the "State Defendants") and the City Defendants violated federal and state law by restricting the hours of operation and method of playing music at Sazon. On September 21, 2011, the State Defendants filed a motion to dismiss the Amended Complaint pursuant to Rules 12(b)(1), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that they are entitled to Eleventh Amendment Immunity and that there was insufficient service of process. On November 7, 2011, Plaintiffs filed a notice of voluntary dismissal with respect to the State Defendants pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.

## II. Discussion

### A. Standard of Review

A motion to dismiss brought under Rule 12(b)(6) will be granted if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal on this ground, a claimant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 1950. Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Additionally, the court must draw all reasonable inferences in the non-movant's favor, *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir. 2007), but it need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

### B. Claims under 42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must establish that the defendant deprived him of a federal or constitutional right while acting under the color of state law. *Cox v. Warwick*

4

*Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011) (citation omitted). The requirement that the defendant act under color of state law requires that he have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). "Generally, a person acts under color of law when he acts in his official capacity, irrespective of whether the challenged conduct advanced a state objective or constituted an abuse of the defendant's official power." *Emanuele v. Town of Greenville*, 143 F. Supp. 2d 325, 331 (S.D.N.Y. 2001) (citations omitted).

Additionally, "under 'color' of law means under 'pretense' of law." *Screws v. United States*, 325 U.S. 91, 111 (1945). Hence, one who "lacks actual authority nonetheless acts under color of state law if he purports to act according to official power." *Emanuele*, 143 F. Supp. 2d at 331. The Supreme Court has explained that "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action." *Griffin v. Maryland,* 378 U.S. 130, 135 (1964) (holding that a deputy sheriff, acting as a private security guard and as agent of the park operator rather than as agent of the state, acted under color of state law when he identified himself as a deputy sheriff and ordered the plaintiff to leave the park, escorted him off the premises, and arrested him for criminal trespass).

Plaintiffs have failed to show how the City Defendants acted under color of state law. They argue that the activities of New York City community board members constitute state action because they are unpaid agents of the City who act as state actors within an official state agency, but it is undisputed that the City Defendants individually and as a whole lack the authority to take any official action with respect to Plaintiffs' requests for a liquor license. CB1 is purely an advisory board and the SLA had sole authority over the issuance of Sazon's liquor license. *See Andrews v. City of New York*, No. 01 Civ. 7333, 2004 U.S. Dist. LEXIS 30290, at *43 (E.D.N.Y. Nov. 22, 2004) (describing community boards as "purely advisory"); *Chapel Farm Estates, Inc. v. Moerdler*, No. 01 Civ. 3601, 2003 U.S. Dist. LEXIS 14593, at *19-20 (S.D.N.Y. Aug. 22, 2003) (same); *Cmty. Bd. 7 v. Schaffer*, 84 N.Y.2d 148, 159 (1994) (same). In fact Plaintiffs concede that "[i]n accordance with the New York City Charter, Community

Boards are vested only to provide advisory opinions to Defendant SLA and are not authorized to grant, deny or condition liquor licenses." Am. Compl. ¶ 45.[1]

Nor has plaintiff sufficiently alleged that City Defendants acted under a pretense of law. *See Screws*, 325 U.S. at 111. The Amended Complaint does not allege that CB1 misrepresented its advisory role or purported to reach a binding decision with respect to Plaintiffs' liquor license. The only allegation in the Amended Complaint that purports to show such a misrepresentation is where Plaintiffs state that "[u]nder duress and misled by the express purported statements that Defendant CB1's Tribeca Committee, and not Defendant SLA, had authority to grant, deny or condition premises licenses, he acceded to Defendant CB1's SLA Committee." *Id.* ¶ 48. However, even in the light most favorable to Plaintiffs, none of the allegations in the Amended Complaint could reasonably be read to constitute acting under pretense of law that CB1 had such authority. In fact, the Amended Complaint makes several references to CB1's role as an advisory board and nowhere do Plaintiffs allege any misunderstanding of this role. Therefore, Plaintiffs have failed to satisfy that any of the City Defendants acted under color of state law, and I need not address whether Plaintiffs' have stated a claim for deprivation of any federal or constitutional right. The First, Second, Third, Fourth and Seventh Claims must be dismissed.

### C. Claims against the City of New York

With regard to municipal liability, Plaintiffs must prove a municipal policy, custom, or practice caused a violation of their constitutional rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Plaintiffs must prove two elements: (1) "the existence of a municipal policy or custom in order to show that the municipality took some action that caused [their] injuries"; and (2) "a casual connection—an 'affirmative link'—between the policy and deprivation of [their] constitutional rights." *Plair v. City of New York*, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985), *cert. denied*, 480 U.S. 916, (1987)). "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking

---

[1] Plaintiffs also concede that "[u]pon receiving its committees' recommendation, Defendant CB1 puts the matter to a full vote and resolves to recommend approval, disapproval or a restricted license to Defendant SLA who is the only New York State government agency that has sole authority to grant, deny or restrict liquor licenses." (Am. Compl. ¶ 30.)

authority in the area in which the action was taken." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) (citing *Monell*, 436 U.S. at 690, and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)).  A municipal custom, unlike a municipal policy, need not necessarily receive formal approval by an appropriate decisionmaker as long as "the relevant practice is so widespread as to have the force of law." *Bowen v. County of Westchester*, 706 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (citing *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997)).

      Plaintiffs have not alleged the existence of any official policy or that a municipal employee with final policymaking authority committed any act in this case.  As explained above, CB1 has no policymaking authority.  Nor have plaintiffs alleged the existence of a widespread practice having the force of law.  To the contrary, Plaintiffs allege that their situation is unique as there are no other establishments suffering a similar type of purported discrimination.  Hence, the Sixth Claim must be dismissed.

### D.  Claim under 42 U.S.C. § 1985

      Plaintiffs also fail in its conspiracy claim made pursuant to 42 U.S.C. § 1985.  To establish a claim under 42 U.S.C. § 1985(3), Plaintiffs must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . . ; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Rodriguez v. City of New York*, No. 05 Civ. 10682, 2008 U.S. Dist. LEXIS 78870, at *44 (S.D.N.Y. Sept. 25, 2008) (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000)) (internal quotation marks omitted).  "To support a claim for conspiracy under section 1985, a plaintiff  must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Id.* at *45 (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)) (internal quotation marks omitted).

      Plaintiffs have alleged no facts to support its conspiracy theory.  The simple fact that two named defendants sit on the same community board, in these circumstances, fails to nudge this claim across the line from conceivable to plausible, and thus the Eighth Count must be dismissed.

### E. State Law Claims

District Courts may decline to exercise supplemental jurisdiction over a state law claim if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c) (2006). Having dismissed all claims over which this Court would have original jurisdiction, I decline to exercise supplemental jurisdiction over Plaintiff's state law claims, i.e., the Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, and Sixteenth Claims.

### III. Conclusion

For the aforementioned reasons, the City Defendants' motion to dismiss the Amended Complaint is granted. Given that Plaintiffs have withdrawn all claims against the State Defendants, the Clerk of Court is instructed to close all motions in this case and remove it from my docket.

New York, New York
November 28, 2011

SO ORDERED.

_____
HAROLD BAER, JR.
United States District Judge

8